## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>100 F Street, N.E.<br>Washington, D.C. 20549,<br><br>       Plaintiff,<br><br>   v.<br><br>MARK MCKINNIES,<br><br>       Defendant. | Case No.<br><br>COMPLAINT |

Plaintiff, the United States Securities and Exchange Commission ("Commission")
alleges as follows for its Complaint against defendant Mark McKinnies ("McKinnies"):

### SUMMARY

1.      This case arises from financial reporting and other violations by a publicly
traded company named Advanced Emissions Solutions, Inc. ("Advanced Emissions")
during the time that McKinnies was the Chief Financial Officer ("CFO") of Advanced
Emissions.  McKinnies violated the federal securities laws by approving and signing the
company's periodic reports, a registration statement and other public filings that included
materially misstated financial statements.  McKinnies also oversaw the inaccurate
recording of transactions in the company's books and records.

2.      McKinnies reviewed and approved financial statements for Advanced
Emissions included in filings with the Commission that violated Generally Accepted
Accounting Principles ("GAAP").  Among other things, Advanced Emissions: (a) failed to
record a large loss contingency in connection with an adverse arbitration ruling against the

company; (b) prematurely recognized revenues on long-term contracts; (c) failed to properly account for warranty accruals; (d) improperly consolidated a joint venture in Advanced Emissions' balance sheet accounts; and (e) overstated revenues and gross profits from one of its subsidiaries.

3.      In February 2016, Advanced Emissions filed restated financial statements to correct these and other errors. Advanced Emissions' February 2016 filing restated numerous line-items in the company's financial statements from 2011 through 2013, as well as some line-items dating to 2010. McKinnies was Advanced Emissions' CFO during the entire period covered by the restatement.

4.      By engaging in the conduct described in this Complaint, McKinnies violated the anti-fraud provisions of Sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(2) & (3)] and the books and records provision of Rule 13b2-1 of the Securities Exchange Act of 1934 ("Exchange Act") [17 C.F.R. § 240.13b2-1].

5.      On account of the violations alleged herein, the Commission seeks a judgment and order enjoining McKinnies from future violations of the applicable provisions of the federal securities laws; requiring McKinnies to disgorge his ill-gotten gains with prejudgment interest and to pay civil money penalties; and imposing upon McKinnies an officer and director bar.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

7.     Venue is proper in this judicial district pursuant to Section 22 of the

Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]

because certain of the acts and omissions constituting violations alleged herein,

including the filing of documents with the Commission at issue in this Complaint,

occurred in this judicial district and the allegations relate to offers or sales of securities

in this district.

8.     McKinnies, directly and indirectly, made use of the mails and of the means

and instrumentalities of interstate commerce in connection with the transactions, acts,

practices, and courses of business described in this Complaint.

## DEFENDANT

9.     **Mark McKinnies**, age 65, was the Chief Financial Officer, Senior Vice

President, Secretary, and a member of the Board of Directors of Advanced Emissions

from 1996 through 2014.  As CFO, McKinnies oversaw the preparation of and signed

the company's filings with the Commission.  McKinnies also had responsibility for the

preparation of Advanced Emissions' financial statements, the company's internal

accounting controls and accounting policies, and the supervision of the finance

department.  McKinnies had been a licensed Certified Public Accountant in Colorado

since 1975.  McKinnies is a resident of Littleton, Colorado.

## RELEVANT ENTITY

10.     **Advanced Emissions** is a Delaware corporation headquartered in

Colorado.  Through its subsidiaries, the company provides environmental solutions to

customers primarily in the power generation industry.  Advanced Emissions' shares are

registered pursuant to Section 12(b) of the Exchange Act.  Until its shares were de-

listed on March 30, 2015, as a result of the company's failure to file current financial statements, shares of Advanced Emissions traded on the NASDAQ Capital Market. The company's shares were re-listed on the NASDAQ Global Market as of July 7, 2016.

11.    In 2013, the company undertook a restructuring pursuant to which Advanced Emissions Solutions, Inc. replaced ADA-ES, Inc. as the public, reporting company and ADA-ES, Inc. became a subsidiary of Advanced Emissions Solutions, Inc. As used herein, "Advanced Emissions" refers to the public reporting company (ADA-ES, Inc. prior to the 2013 restructuring and Advanced Emissions Solutions, Inc. following the restructuring).

## FACTS

### *Background*

12.    In early 2014, Advanced Emissions' newly hired auditor and a consultant hired by Advanced Emissions each identified accounting and internal accounting controls problems at the company.  Advanced Emissions subsequently failed to file any periodic reports with the Commission for almost two years beginning with the fourth quarter of 2013.

13.    In the 2014 annual report on Form 10-K that Advanced Emissions ultimately filed in February 2016, the company restated numerous line-items in its financial statements originally filed from 2011 through 2013, as well as certain line-items dating to earlier periods (the "Second Restatement").  McKinnies had reviewed and approved all of those financial statements and had signed the filings that included the misstated financial statements.  The Second Restatement addressed errors relating to, among other things, (a) Advanced Emissions' failure to record a large loss contingency in

connection with an adverse arbitration ruling against the company; (b) the premature recognition of revenues on long-term contracts; (c) the failure to properly account for warranty accruals; (d) the improper consolidation of a joint venture; and (e) the overstatement of revenues and gross profits from one of its subsidiaries.  The net effect of the Second Restatement was a significant reduction in previously reported revenues and net income in Commission filings that McKinnies had reviewed, approved and signed.

14.    The materially false and misleading financial statements identified above were included or incorporated in:  (a) annual reports on Form 10-K from at least 2011 through 2012; (b) quarterly reports on Form 10-Q from at least the first quarter of 2011 through the third quarter of 2013; (c) current reports on Form 8-K reporting Advanced Emissions' financial results from at least the first quarter of 2011 through the third quarter of 2013; and (d) a January 28, 2011 registration statement on Form S-3.  McKinnies reviewed, approved and signed each of these filings.

15.    During the period in which McKinnies reviewed, approved and signed filings with materially false financial statements, Advanced Emissions sold stock in public offerings.  Advanced Emissions raised net proceeds of approximately $32.7 million in November 2011 and approximately $29 million in November 2013 in offerings made pursuant to the January 28, 2011 registration statement on Form S-3.

***Failure to Record Loss Contingency Relating to Adverse Ruling in Arbitration***

16.    In 2011, McKinnies failed to record, or cause members of the finance department to record, the long-term liability associated with a portion of an adverse arbitration ruling against Advanced Emissions and certain affiliated entities.  The company recorded a small short-term liability associated with this portion of the ruling.

The failure to record an appropriate long-term liability caused Advanced Emissions to materially under-report its expenses and liabilities in 2011 and its liabilities in subsequent periods.

17.    The liability that should have been reported in 2011 related to a lawsuit that one of Advanced Emissions' former contractors filed against the company and certain of its affiliates in 2008.  The lawsuit alleged misappropriation of trade secrets and breach of a non-solicitation provision of the parties' market development agreement.  The dispute primarily related to the activities of a joint venture partner of Advanced Emissions that produced activated carbon (the "AC JV").  Advanced Emissions had an indemnity obligation to the AC JV and a wholly-owned subsidiary of the AC JV.  Advanced Emissions disclosed in filings with the Commission that the suit could have a material adverse impact on the company's business and financial condition.

18.    The dispute was later brought before an arbitration panel, which issued an interim adverse ruling against Advanced Emissions on April 8, 2011.  McKinnies knew the terms of the adverse ruling.  The interim adverse ruling had two components:  (a) holding Advanced Emissions liable for $37.9 million in damages for breach of the non-solicitation provision (fixed amount); and (b) holding Advanced Emissions jointly and severally liable for an amount calculated as a percentage of the gross revenues generated by the AC JV through 2018 (the "variable amount").  As a result of its contractual indemnity obligation, Advanced Emissions was obligated to pay the full variable amount.

19. Within days of the arbitration panel's adverse ruling, McKinnies, along with other members of Advanced Emissions' management and Board of Directors, discussed how to record the adverse ruling in the upcoming quarterly report for the quarter ending March 31, 2011. McKinnies expressed concerns regarding the impact that the accounting for the adverse ruling would have on Advanced Emissions' business prospects. McKinnies attended an April 12, 2011 Board of Directors meeting where the attendees discussed "the importance of not putting the company in an inferior competitive position because of the way the accounting financials were portrayed [regarding the amounts due under the adverse ruling] and the importance of keeping the current liability number appropriately and accurately small until there was more clarity in terms of the final award."

20. GAAP provides that a loss contingency should be recorded if the loss is probable and reasonably estimable (ASC 450-20-25). (Effective for interim and annual periods ending after September 15, 2009, FASB codified authoritative accounting literature in the Accounting Standards Codification.). GAAP further states that the requirement of a reasonably estimable amount, "shall not delay accrual of a loss until only a single amount can be reasonably estimated. To the contrary, when the condition in paragraph 450-20-25-2(a) is met and information available indicates that the estimated amount of loss is within a range of amounts, it follows that some amount of loss has occurred and can be reasonably estimated." McKinnies, at a minimum, should have known the relevant GAAP.

21. In the days after the interim adverse ruling was issued, McKinnies prepared a spreadsheet with an estimate of Advanced Emissions' indemnity obligation

with regard to the variable amount for each year from 2011 through 2018.  The analysis,

which was circulated to other members of management and the Board of Directors,

estimated an amount of over $36 million that Advanced Emissions could potentially

record as a long-term liability for its indemnity obligation with regard to the variable

amount of the adverse ruling.  Accordingly, under GAAP, a loss contingency in

connection with the variable amount should have been reflected within the 2011

financial statements since the liability was probable and reasonably estimable.

     22.     Advanced Emissions subsequently entered into settlement agreements in

August and November 2011 that, like the terms of the adverse ruling, obligated the

company to make variable payments through 2018.  McKinnies was involved in

negotiating these settlement agreements and was aware of their terms.  McKinnies

updated his estimates of Advanced Emissions' indemnity obligation for the variable

amount to take account of the final settlement terms.  For example, in a November 2011

communication following Advanced Emissions' entry into the settlement agreements,

McKinnies stated his expectations of the amounts that Advanced Emissions would pay

annually through 2018 to satisfy its variable amount obligation.  In addition, in June 2012,

McKinnies drafted a memorandum to be sent to the Division of Corporation Finance of the

Commission that included similar projections of annual payments that Advanced

Emissions would make in connection with its variable amount obligation.  An accounting

consultant hired by Advanced Emissions, who reviewed a draft of the memorandum, noted

that the company should be prepared to explain to the Commission why it had not

recorded an expense or liability in connection with the variable amount owed by Advanced

Emissions.  McKinnies, however, did not re-evaluate his decision not to record any liability in connection with the variable amount in response to the question.

23.     McKinnies did not record, and did not cause anyone in the finance department to record, a long-term liability or associated expenses in connection with the variable amount at any time prior to the Second Restatement even though he, at a minimum, should have known that the long-term liability and expense should have been recorded.

24.     As part of the Second Restatement, Advanced Emissions recorded a long-term liability and expense of approximately $25.9 million in 2011, resulting in a material reduction in 2011 income and material increase in long-term liabilities in 2011 and subsequent periods as compared to the amounts that had previously been reported.

**Premature Recognition of Revenue on Long-Term Contracts**

25.     During McKinnies's tenure as CFO, Advanced Emissions implemented a method of accounting for revenues on long-term contracts in 2007 that did not comply with GAAP, resulting in the premature recognition of revenues in connection with the company's emission control contracts through 2013.

26.     As part of its emission control business, Advanced Emissions routinely entered into long-term contracts with customers—contracts that often took months, or even years, to complete.  Until 2006, Advanced Emissions sub-contracted with another manufacturer for the construction of emission control systems, which Advanced Emissions designed.  Advanced Emissions began self-performing these contracts in 2007.  Even after it began self-performing the contracts, however, Advanced Emissions lacked the capacity to build the tanks that were a significant aspect of the emission control contracts.

27.     Shortly after Advanced Emissions began self-performing the contracts, McKinnies reviewed and approved a change in policy pursuant to which Advanced Emissions used the percentage-of-completion methodology to account for revenues on the emission control contracts.  Under the policy, Advanced Emissions used labor hours as the method of input to determine the percent by which each project was completed (by comparing the labor hours expended to the total labor hours expected to be necessary in order to complete the contract).

28.     A company memorandum documenting the accounting policy, which McKinnies reviewed and approved, cited AICPA Statement of Position 81-1 (ASC 605-35) as the GAAP relevant to percentage of completion for long-term contracts.  The provision states, among other things, that if a contractor uses labor hours as the input method, estimated total labor hours should include "(a) the estimated labor hours of the contractor and (b) the estimated labor hours of subcontractors engaged to perform work for the project, if labor hours of subcontractors are a significant element in the performance of the contract. . . . *If the contractor is unable to obtain reasonably dependable estimates of subcontractors' labor hours at the beginning of the project and as work progresses, he should not use the labor-hours method.*"  SOP 81-1.48, as codified in ASC 605-35-25-72 through 25-73 (emphasis added).

29.     McKinnies, however, failed to include (or cause others in the finance department to include) the incurred or projected labor hours of the tank manufacturers—the most significant cost in most emission control contracts—in calculating the percent by which its contracts were complete for the purpose of reporting revenues.  McKinnies did not attempt to obtain the incurred or projected labor hours from the tank manufacturers.

30.     Because the engineering labor hours of Advanced Emissions employees were typically expended earlier than the labor hours of the tank manufacturers, the failure to include the projected or incurred manufacturers' labor hours resulted in Advanced Emissions' premature recognition of revenues.  McKinnies, at a minimum, should have known that the failure to include sub-contractor labor hours resulted in the premature recognition of revenue in violation of GAAP.

31.     As part of the Second Restatement, Advanced Emissions determined that it could not make reasonably dependable estimates of labor hours and applied the completed contract methodology for recognizing long-term contracts—*i.e.*, it would only recognize revenues upon the completion of the contract.  The change resulted in a reduction in previously reported revenues of more than $24 million in the first three quarters of 2013 alone, a portion of which was recognized in later quarters.

***Failure to Properly Account for Warranty Accruals***

32.     Advanced Emissions instituted a policy that resulted in the company's systematic over-accrual of warranty liabilities.  McKinnies identified the issue in early 2013, but nonetheless failed to properly have the error corrected in the company's financial statements.

33.     Advanced Emissions typically provided a warranty to its emission control customers that covered equipment and a separate warranty to these customers that covered contractual performance (*e.g.*, warranties concerning the level of pollutant reduction).  The terms of the warranties, including the length of the warranties, were set forth in Advanced Emissions' customer contracts.  Through 2012, Advanced Emissions typically reserved 1-2% of expected revenues on each project for the equipment warranty and between 2% to 5% of expected revenues for the performance warranty,

depending upon the level of risk. Advanced Emissions tracked the warranty accruals on a project-by-project basis.

34.    Until 2013, Advanced Emissions did not reduce the warranty liability for any given project when the warranty period had expired. Instead, reserves for expired warranties remained on the company's books and continued to be reported as "accrued warranty and other liabilities" on the balance sheet of the company's financial statements. McKinnies approved of this practice, which was not in conformity with GAAP. Advanced Emissions' failure to reduce its reserve when warranties had expired caused the reserve to be overstated and not a reasonable estimate of the amount of loss incurred. GAAP requires, with respect to loss contingencies, that "[i]f some amount within a range of loss appears at the time to be a better estimate than any other amount within the range, that amount shall be accrued." *See* ASC 450-20-30-1. McKinnies, at a minimum, should have known that the practice did not conform with GAAP.

35.    In January 2013, at McKinnies's request, members of Advanced Emissions' finance department undertook an analysis to identify accrued warranty liabilities relating to warranties that had already expired, so that these liabilities could be reversed. Although McKinnies recognized the potential overstatement by at least January 2013, which was before Advanced Emissions filed its 2012 annual report on Form 10-K, McKinnies improperly decided that any reversal of warranty liabilities would take place in 2013.

36.    The analysis that McKinnies commissioned, which was completed in late March 2013, determined that over two-thirds of the amounts related to warranty liabilities had already expired. Rather than correct the warranty accrual at that time, however,

McKinnies instructed his team to reverse the over-accrual in equal amounts over ten months. McKinnies,, at a minimum, should have known that his instruction was not in accordance with GAAP, which requires that the company present its best estimate for a liability in the current reporting period. *See* ASC 450-20-30.

37.     In the quarterly reports for the first three quarters of 2013, which McKinnies reviewed, approved and signed, Advanced Emissions did not disclose that it had reversed previously accrued liabilities. Rather, the quarterly reports merely showed the net amount of accrued warranty liabilities (*i.e.*, the amount of new accruals for new projects net of the liabilities that it reversed for projects where the warranty obligation had expired). The failure to disclose that the accruals represented amounts for newly accrued liabilities netted against reversals of prior accruals was not in compliance with GAAP, which provides that a tabular reconciliation of changes in the guarantor's aggregate product warranty liability for the period be presented, including the aggregate changes in the liability for preexisting warranties (including adjustments for changes in estimates). *See* ASC 460-10-50-8c. This failure also had the effect of making the company's previous error in over-accruing warranty reserves difficult to identify.

38.     As part of the Second Restatement, Advanced Emissions reduced its warranty accruals from the amounts it had previously reported dating to at least 2011.

***Failure to Properly Evaluate Whether to Consolidate Financial Results of a Joint Venture***

39.     As of 2007, Advanced Emissions' joint venture, Clean Coal Solutions ("CCS"), was 50% owned by Advanced Emissions and 50% owned by another company. McKinnies concluded at the time that Advanced Emissions should

consolidate the results of CCS in its financial statements pursuant to FASB
Interpretation No. 46(R) ("FIN 46(R)") "Consolidation of Variable Interest Entities."

40.    In June 2009, Financial Accounting Standard No. 167 ("FAS 167") was
issued to amend FIN 46(R) and was effective for Advanced Emissions' fiscal year 2010.
The guidance reflected in FAS 167 was codified as part of ASC 810 "Consolidation."
FAS 167 amended previous guidance to require that an enterprise identify which
activities most significantly impact an entity's economic performance and determine
whether it has the power to direct those activities.  McKinnies, however, did not evaluate
whether it was appropriate to continue to consolidate CCS in 2010 in light of the new
accounting guidance, although he, at a minimum, should have known that the
conclusion should have been re-evaluated.

41.    In mid-2011, Advanced Emissions sold part of its stake in CCS, resulting
in Advanced Emissions and its joint venture partner each owning a 42.5% interest in
CCS, with a third party owning 15%.  McKinnies reviewed and approved of a memo by
a member of his staff concluding that it was still proper to consolidate CCS.  The memo
did not include any analysis under FAS 167 to support the conclusion.

42.    Even when a consultant hired by Advanced Emissions questioned whether it
was appropriate to consolidate CCS in 2012, McKinnies failed to evaluate whether the
consolidation of CCS was in accordance with GAAP.

43.    As part of the Second Restatement, Advanced Emissions determined that,
under FAS 167, it was not proper to report CCS's financial results on a consolidated basis.
The de-consolidation of CCS had a material impact on the presentation of Advanced
Emissions' financial statements.

***Failure to Properly Eliminate, and Overstatement of, Revenues of BCSI, LLC***

44.     In August 2012, Advanced Emissions through its wholly-owned subsidiary,

BCSI, LLC ("BCSI"), acquired the assets of two related privately-held companies. BCSI

had the capacity to construct certain types of emission control systems. McKinnies played

a significant role in evaluating and consummating the acquisition.

45.     From the time of the asset purchase, McKinnies knew that BCSI staff had

no professional accounting training. As BCSI increased its operations, McKinnies was

informed of numerous problems with the reliability of the financial data obtained from

BCSI.

46.     For example, after visiting BCSI headquarters in June 2013, an employee

in Advanced Emissions' finance department noted, in an email to McKinnies, a number

of problems including: (a) the existence of contracts where the revenue recognized

exceeded the contract value; (b) the misclassification of expenses between overhead

and costs of goods sold; and (c) that there were reasons to call into question the use of

a 30% assumed margin in recognizing revenues and costs. Likewise, McKinnies noted

in a June 2013 email that "[t]he flow of information from BCSI is sometimes hit or miss .

. . The lack of cost accounting at BCSI is a problem . . . ." In addition, McKinnies saw a

September 2013 report concerning BCSI, which indicated that basic information

concerning BCSI's projects was missing from the relevant accounting system.

47.     Notwithstanding these known problems, Advanced Emissions recorded and

reported BCSI's revenues using a percentage-of-completion methodology in connection

with BCSI's performance of emission control contracts (including certain contracts that

BCSI performed on its own and others performed in conjunction with another Advanced

Emissions subsidiary). The percentage-of-completion methodology, however, requires,

among other things, the use of accurate data concerning costs and project status.
Because Advanced Emissions did not have this type of accurate data from BCSI, yet
continued to use the percentage-of-completion methodology, the company over-reported
BCSI's revenues and gross profits in at least the Form 10-Q for the first quarter of 2013,
which McKinnies reviewed, approved and signed.

48.    Advanced Emissions also failed to properly eliminate inter-company
revenues in connection with certain BCSI projects.  There were several projects in 2013
where both BCSI and another subsidiary of Advanced Emissions performed work.
BCSI recorded revenues that it expected to receive from the other subsidiary.  In its
consolidating accounting entries, which McKinnies reviewed and approved, the
company failed to eliminate these revenues when reporting its consolidated results; the
company eliminated only the gross profits on those projects.  This error resulted in
double-counting certain revenues in Advanced Emissions' financial statements for the
first three quarters of 2013, which McKinnies reviewed, approved and signed.

***McKinnies Sold Stock at Inflated Prices***

49.    From 2011 to 2014, McKinnies sold shares of Advanced Emission stock
during the period when Advanced Emissions' financial statements were materially
misstated in public filings and the company's stock price was improperly inflated.
Accordingly, McKinnies received ill-gotten gains as a result of his conduct.

## FIRST CLAIM FOR RELIEF

**Violating Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) & (3)]**

50.    Paragraphs 1 through 49 are realleged and incorporated by reference
herein.

51.     McKinnies, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

      a.  obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      b.  engaged in transactions, practices, or courses of business which operated or would operate as frauds or deceits upon the purchasers.

52.     By engaging in the conduct described above, McKinnies violated, and unless restrained and enjoined, will in the future violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) & (3)].

## SECOND CLAIM FOR RELIEF

### Violating Rule 13b2-1 of the Exchange Act
### [17 C.F.R. § 240.13b2-1]

53.     Paragraphs 1 through 49 are realleged and incorporated by reference herein.

54.     McKinnies, by engaging in the conduct described above, directly or indirectly, falsified or caused to be falsified Advanced Emissions' books, records, and accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

55.     By engaging in the conduct described above, McKinnies violated, and unless restrained and enjoined, will in the future violate, Rule 13b2-1 of the Exchange Act [17 C.F.R. § 240.13b2-1].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

A.  Permanently enjoin McKinnies from violating Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)], and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1];

B.  Order that McKinnies disgorge his ill-gotten gains obtained as a result of the conduct alleged in this Complaint, with prejudgment interest;

C.  Order that McKinnies pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] in an amount to be determined by the Court;

D.  Order that McKinnies be prohibited, for a period of five years, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l], or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)]; and

E.  Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Date:  March 29, 2017

Duane K. Thompson
District of Columbia Bar No. 376180
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Tel:  (202) 551-7159
Fax: (202) 772-9292
Email: thompsond@sec.gov

Of Counsel:
Lisa Weinstein Deitch
California Bar No. 137492
Ian R. Dattner
New York Bar No. 4411187
Securities and Exchange Commission